## RECTOR *vs.* HARTT.

1. It is well settled that the owner of land may, without deed or writing, dedicate it to public uses. No particular form or ceremony is necessary in the dedication. The assent of the owner of the land, and the fact of its being used for the purposes intended by the appropriator, are sufficient to constitute a dedication. But where such owner is interested in proving such dedication, and seeks to gain some advantage thereby, he will be held to strict proof of a dedication, and evidence that would have established a dedication as against him will not be sufficient.

2. The plaintiff was the owner of a quarter of a section of land, about twenty-five acres of which was laid off into forty-eight town lots. The plaintiff was the owner of the entire quarter section, with the exception of one of the lots, ninety by one hundred and fifty feet. The streets and alleys were unopened, designated by no monuments, and covered with brush and timber with a single highway through the tract. Under an execution issued on a judgment against the plaintiff, the sheriff levied upon the whole quarter section, describing it as the north-west fractional quarter of section 35, township 49, range 17, and sold the whole tract by such description: *Held,*

> That the description was sufficiently certain ; that this case was clearly distinguishable from the case of Evans *vs.* Ashley (8 Mo. Rep., 177,) where a tract of 12½ arpens was laid off into town lots, and the defendant in the execution was the owner of six of the lots by purchase from the person who laid off the tract into lots, and the sheriff, under such execution, sold the whole tract by its original description.

3. The 13th section of the act of February 21, 1825, concerning Executions, providing, "that in all cases where execution shall be levied upon any real estate, the sheriff shall divide the property, if susceptible of division, and sell only so much thereof as will be sufficient to satisfy the execution," &c., is directory. A violation of its injunction will not make a sale void, although it may be good cause for setting *it* aside. *Every application to vacate or set aside a sale so made* must be governed by its own circumstances : no general rule can be laid down upon the subject.

## ERROR to Cooper Circuit Court.

HAYDEN *and* MILLER, *for Plaintiffs in Error.*

1. A sheriff has power and authority to sell real estate in mass, or in the entirety, under execution, although it may be susceptible of division, and may, in fact, consist of several pieces ; the statute, pointing out the mode of selling land under execution, is merely directory, and a non-compliance with its provisions does not render the sale void. — *Woods vs.* Morrell, 1 Johns. Chan. Rep., 501 ; 2d part of New York Digest, p. 1,022, sec. 510, 511 ; 6 Wendell, 522 ; Hicks & Hammonds *vs.* Perry, 7 Mo. Rep., 346 ; 1 Monroe's Ky. Rep., 94, 5.

2. Whether the sheriff, in making a sale under execution, pursues the directions of the statute — viz., whether he sells in mass, or in lots, or parcels, is a matter which cannot be inquired into collaterally. In such cases, relief or redress can only be had by direct application to the court under whose process the sale is made, or by resort to a court of equity, where, if the sale be set aside, all parties may be placed *in statu quo.* — Thompson *vs.* Phillips, 1 Baldwin's Cir. Court Rep., 271, 2, &c. ; 11 Serg. & Rawle, 424 ; 2 Peters' Rep., 163–9 ; Thompson *vs.* Tolmier, 10 Peters' Rep., 450, 479 ; 6 Wend. Rep., 522 ; 3 Wash. Cir. Rep., 550,

557; 3 Marshall's Ky. Rep., 281; 1 Bibb's Rep., 155; 2 *Ibid.*, 518, 202; 7 Mass. Rep., 292–6; 11 *Ibid.*, 227; 3 Howard's Rep., 64, 5; 1 Serg. & Rawle, 101; 2 Harrington's Rep., 474; 1 *Ibid.*, 477; 1 Monroe's Ky. Rep., 94.

3. The acknowledgment of a sheriff's deed is a judicial act, and is in the nature of a judgment of confirmation, which cures all defects in the mode of sale which the court issuing the process had the power to remedy. The purchaser depends upon the judgment, the levy, and the deed of conveyance : all other questions are between the parties to the judgment and the sheriff; and the object of our statute, in requiring the deed for the land to be acknowledged by the sheriff in open court, is — to enable the court to see and know that the sheriff, in making the sale, has not abused the process under which the sale was made, and to afford the parties interested an opportunity, before the confirmation of the sale, to make to the court any objections which they may have thereto. — Baldwin's Cir. Court Rep., 272 ; 1 Serg. & Rawle, 101; 4 Yates, 214; 6 Binney, 254; 2 Serg. & Rawle, 54, 55.

4. Even if the acts of the officer, in making the sale to Adams, could be inquired into collaterally, yet, under the circumstances of this case, the sheriff, in making the sale, did not exercise his discretion unsoundly, for the following reasons : —1st. Because there were no monuments, or other evidence, upon the land itself, showing that any part of it had been laid off in lots for separate and distinct enjoyment; on the contrary, there was but one single tenement or house thereon ; nor were there any streets, lanes, or alleys cleared or opened, by which the sheriff could have been guided in making his levy and sale of the land in lots ; nor was there any town plat made, signed and acknowledged, as required by law, recorded in the recorder's office of Cooper county, by Hartt, or by any one else, to which the sheriff could have referred, showing that there were town lots laid off upon *the land in dispute;* and to have required the sheriff to have made his levy, advertisement and sale of the land in lots or parcels, describing them with sufficient certainty to point out to the purchaser what he was buying, would have been requiring of him, under *the circumstances of this case,* an impossibility.

5. The sheriff could not sell, neither was he bound to sell, the real estate of Hartt, under execution, *as town lots,* and in a manner that Hartt *could not* sell it himself; and, at the time of the sale to Adams, Hartt could not have sold any part of the quarter section of land as town lots, without subjecting himself to a severe penalty for the transgression ; and he could not require the sheriff to trample upon the statute for his benefit. — 2 Digest of 1825, p. 763, sec. 1–4.

And aside from this statute, Hartt being merely a tenant in common with others in the quarter section, could not have sold to any person any particular part of the quarter section by metes and bonds, nor could he grant a servitude therein without the consent of his co-tenants ; nor could the same be executed by extent, &c., in parts by metes and bounds, the same being void at common law. That the whole, or a part only, of his undivided interest in *the whole tract* of land could be sold by him, or upon execution by the sheriff. — 4 Kent, lecture 64, p. 368 ; 3 *Ibid.*, p. 436, lecture 52; 9 Mass. Rep., 34; 18 Maine Rep., 229; 9 Vermont Rep., 138; 12 Mass. Rep., 348, 490; Vamain *vs.* Abbott, 13 Mass. Rep., 257; 14 Mass., 404; 2 Conn. Rep., 243.

6. By the law of this State, there is but one way or mode by which a person owning land can legitimately lay off a town upon his land, and sell lots therein by himself or by another, and that is the one which is pointed out in the act above referred to, and which has been since in substance, if not in words, re-enacted. And there are but two ways, or modes, of dedicating streets and alleys to the use of the government, and those must be either by *express grant*, as is pointed out by the statute above referred to, or by the *actual use* thereof *as a public thoroughfare by the public*, for *so great a length* of time as to give rise to the presumption that such use thereof was, and is, *with the consent* of the owner of the land, amounting to *prima facie* evidence of a grant to the public of the servitudes; and perhaps this may be yielding more than by our statutes is warranted. But in this case the streets were never used or opened prior to the sale. — 13 English Com. Law Rep., 45, 46; Jarvis *vs.* Dean (same case in 3 Bingham, p. 447), 2 Strange's Rep., 1,004; Sir John Lade *vs.* Shepherd; Roberts *vs.* Kar, 1 Campbell, 262; 6 Peters' U. S. Rep., the City of Cincinnati *vs.* the Lessee of White, p. 433, and following.

7. The Circuit Court erred in permitting Hartt to read, in evidence to the jury, the copy of the deed of release to Thomas Rogers, as also the other deeds of release for certain lots, for the following reasons: — 1st. They, and each of them, were irrelevant, having no tendency to show that he (Hart) had laid off any town lots upon *the quarter section* sued for, or that he had adopted the laying off lots by Morgan and Lucas; for the *only plats* in the possession of the recorder, and to which reference in the deeds can be supposed to apply, are the plats wafered in the recorder's books, which are *not signed or acknowledged* by Lucas and Morgan, or any one else, *as the owners* of lots intended to be represented by them; and *even* if they had been, or were, signed and acknowledged by Lucas and Morgan, there is nothing stated upon *the face* of these plats which shows that the lots therein represented are situate upon the *land sued* for, nor on *what land* situate; therefore, these deeds and plats, taken separately or in connection, could not have informed the sheriff that there were lots laid out upon the land, so as to have guided him in the levy and sale; and he was not bound to inquire for deeds *in the country*, or to guess where the lots on these plats were situate; and the plats not being recorded or acknowledged, *agreeably* to law, were not notice to any one.

The copy of the deed to Rogers was improperly admitted, without accounting for the non-production of the original, even if such evidence were relevant.

The other deeds being for lots off of the quarter, as proven by the witnesses, did not conduce to show any dedication of streets on the quarter; and so it is in this case: *as* the streets and alleys were not *expressly* dedicated or granted to the public by Hartt, nor *ever used by the public as such*, the *mere deed* of release to Rogers conferred no *public right* to streets, &c., but carried a mere *private* right in favor of Rogers, the grantee, to pass to and from the lot released, over the adjacent lands of the grantor.

8. The court erred in refusing to permit the defendant, Rector, to read from the record book of recorded deeds the copy of the deed from Wm. M. Adams to Mary Gilman, under whom defendant claimed title to the lot of which he was possessed,

after proving that the original had been, many years since, delivered to the agent of Mrs. Gilman by the recorder, both of whom being resident citizens of Kentucky. — 7 Pickering's Rep., p. 10.

9. The Circuit Court erred in rejecting the record of the proceedings of Hartt, whilst in custody upon *the same execution* under which the land was sold, to obtain the relief granted by statute to insolvent debtors; in which proceeding, within one month from the time of sale, he expressly declared and swore, in writing, that he did not own but one lot in Boonville, and owned no land, and this lot was not on the quarter sued for. From this *sworn declaration*, taken in connection with other circumstances proved on the trial, the jury could well infer that the land had been sold by the sheriff with his consent, he not offering any proof that he had sold it himself; especially when taken in connection with the facts that he had made no objections to the sale, though made so recently in his presence, and having stated in his said proceedings, as an insolvent, the balance of the debt yet remaining due Smith (plaintiff in the execution), after receiving the credit endorsed by the sheriff. The said written and sworn statement, *virtually* acknowledging a transfer of the property mentioned in the patent, and negativing the idea that *he then owned* any lots upon the quarter, none being mentioned. If the land or lots had been sold by him prior to this proceeding, when was it, and to whom?

10. The Circuit Court erred in rejecting the record of the assessment made by the assessor of Cooper county, in the year 1828, of Hartt's lands, by which assessment it appears that Hartt assessed no town lots upon the quarter, though twelve years after the alleged laying off of the land in lots by Morgan and Lucas, and eight years after the date of the deed of release to Rogers of a lot. This proof was offered to negative the idea, that Hartt claimed or held the land in separate or distinct lots, and to show that he claimed and held it *as it was* patented to him, and as he sues for it now, by *its name* — " N. W. quarter of section No. 35, T. 49, &c."

11. The court erred in overruling the motion of the defendant to exclude from the jury all the evidence given by plaintiff with reference to the laying out lots, &c., upon the land, by Morgan and Lucas, *adverse claimants* upon the land in the year 1816, of which the sheriff could not be presumed to have knowledge at the time of the sale to Adams, *thirteen years afterwards*, a matter in *pais*, and of which he would not have been bound to take notice had the same been done recently, next preceding the sale, by *these adverse claimants*.

And, upon the same principle, the sheriff could not be presumed to know anything respecting the act of conveying, by *release*, to Rogers, nine years prior thereto; and if he did not know it, he was not bound to take notice of the act, as it is not presumable he could know with what intent the deed was made; and, besides, the *copy* was inadmissible, and the whole of it irrelevant, as before stated, and ought to have been rejected.

12. In this case, as the sheriff had power to convey all the right and title to the land, and did convey the same, to Adams, until that sale is set aside by some *direct* proceeding, making Adams a party, the legal title thereby acquired must, and will, prevail against the plaintiff in this action, though the title of the defendant, Rector, be never so weak.

13. Even if the title acquired by Adams, under the execution sale, could be inquired into *collaterally* in this action, yet as the legal title passed by the conveyance of the sheriff to him, such title cannot be disturbed or disregarded in this controversy, unless, from all the circumstances, it appears that the sheriff, in the levy and sale, conducted himself so improperly and flagrantly in violation of the rules of law, conscience and equity — and that the purchaser connived at it, or participated therein — as to warrant a court of equity, in a *direct proceeding* by bill in chancery, to set the same aside ; and in this case we insist, that, so far from the sheriff having acted oppressively, fraudulently, or improperly, he acted fairly, honestly, and with as much prudent and sound discretion as any man could have done under the same circumstances, possessing the intelligence common to mankind; and as Hartt was present at the time of the sale, and made no objection to it, *accepted* a credit upon the execution against him, and has acquiesced nine years in the sale, and until a city has been built upon the land — a lapse of time doubly, or nearly doubly, as long as is allowed him by our statute to reverse the proceedings of the court rendering the judgment for error therein, or for irregularity in the execution of it — it would be an encouragement to fraudulent debtors for this court to sanction the objection set up by Hartt to the title acquired by Adams under said sale; and it would be establishing a doctrine directly in contact with the well-settled principle in equity — "That he who is silent when he ought to speak, shall not be heard to speak when he ought to be silent."— 6 Johns. Chan. Rep., 166; Storrs & Brooks *vs.* Barker ; Sugden on Vendors, 299, &c., and authorities referred to; 4 Blackford's Rep.; *Ibid.*, on the demise of McGuire *vs.* Smith, 228–31; 6 Johns. Chan. Rep., Fernan *vs.* Wilson and others, 411, P. C.: this case points out the circumstances, &c., which ought to vitiate a sale by sheriff.

14. The appellant insists, that there is a difference between a sale and conveyance made by a sheriff having power and authority under a valid execution, in the presence of the debtor, who is silent, and does not object to a sale to an innocent purchaser, and the case of a sale made by a person pretending to have title when he has none, to an innocent purchaser, in the presence of the *real owner*, who is present, and keeps his title or right to the land secret from the purchaser. In the former case, the legal and equitable title passes ; and in the latter, the equitable title only passes, and places the purchaser in a condition to wrest from the hands of the person who has the legal title, for *his fraud* in keeping secret his title from the purchaser.

15. The court erred in giving to the jury the fourth instruction asked by Hartt, in this — that by the instruction the jury were told, that if they found, from the evidence, that before the issuing of the execution against Hartt & Tennell, under which the sale was made to Adams, a portion of the quarter section had been laid off into town lots, embracing lot No. 113 (the one in controversy), for separate and distinct enjoyment by persons claiming adversely to Hartt, and that a plat of the lots, streets and alleys had been made, and was deposited in the office of the clerk of the Circuit Court of Cooper county; and that afterwards, and before the issuing of said execution in favor of Smith, Hartt, or those under whom Hartt claimed, *adopted* such laying out of the ground into town lots, streets and alleys,

*by conveying* to others *any* of such lots so laid out, describing the same in the deed of conveyance by reference to the plat, or by any other act; and further find, that the sheriff sold the whole quarter section in one lot to Adams, as alleged in the deed to Adams; that such sale is void, and does not divest the plaintiff of his title created by the patent, unless the jury find, from the evidence, that Hartt *desired* the sheriff to sell the whole quarter section together.

The appellant insists, that the court, in giving this instruction, violated the law in two particulars : — 1st. It required them to take the *mere fact* of releasing the lots by Hart, by deeds, referring to the plat *deposited* in the clerk's office *as conclusive evidence* of his intending *thereby* to adopt the acts of the adverse claimants in laying off lots upon the land'; whereas, at most, it could amount to *nothing more* than *evidence* from which the jury could have inferred that Hartt intended to adopt the plat, to be weighed against the opposing evidence given by defendant: but, 2d, it was no evidence under the view presented in the seventh point above made.

16. The court erred in refusing all and every of the instructions asked for by the defendant; and for the reasons urged against the rejection of the instructions of defendant, so asked, appellant's counsel refer to their argument at large in their original brief.

LEONARD, *for the Defendant in Error.*

1. If an execution sale be *void*, and not merely *voidable*, such invalidity may be shown in any proceeding in which the sale comes collaterally in question.— Woodcock *vs.* Bennett, 1 Cowen's Rep., 739.

2. In order to constitute an execution sale not merely void, it is not sufficient that there be a judgment execution and sale in fact; other things are requisite; some prescribed by the statute law, and others by the rules of right reason applicable to the subject. — Litchfield *vs.* Cudworth, 15 Pick. Rep., 28 ; Williams *vs.* Amory, 14 Mass. Rep., 29 ; Shield *vs.* Soper, 14 Johns. Rep., 352 ; Lawrence *vs.* Spead, 2 Bibb's Rep., 401 ; Storer *vs.* Boswell, 3 Dana's Rep., 235 ; Wordye *vs.* Barlay, Noys' Rep., 59 ; McGuire *vs.* Smith, 4 Black. Rep., 228 ; Reed *vs.* Carter, 3 Black. Rep., 377 ; Pepper *vs.* The Commonwealth, 6 Mon. Rep., 30 ; Gordon *vs.* Rankin, 2 Harrington's Rep., 474 ; Patterson *vs.* Carneal's Heirs, 3 Marsh Rep., 619 ; Davidson *vs.* McMurtry & Ellington, 2 J. J. Marshall, 36, 68.

3. The sheriff's sale, under the execution of October, 1828, is void, so far as the town lot in controversy is concerned, and not merely voidable : —

I. For uncertainty in the description of the property sold. This lot was one of the forty-eight town lots into which about twenty-five acres of the whole quarter had been laid out, with intervening streets and alleys, dedicated to the public, of which lots the plaintiff was the owner of forty-seven, having previously sold one of them to a third person; and the lot now in controversy is described in the levy, advertisement, sale and deed, and passes, if it passes at all, only as an undefined part of the whole quarter section, out of which it was carved. — Symonds *vs.* Catlin, 2 Carnes'· Rep., 65; Jackson *vs.* Rosevelt, 13 Johns. Rep., 97 ; Jackson

*vs.* Delancy, 13 Johns. Rep., 537; Hartt *vs.* Rector, 7 Mo. Rep., 531; Evans *vs.* Ashley, decided in this court, July Term, 1843.

II. The whole quarter section, embracing as well the forty-eight town lots into which part of the tract was subdivided, as the residue of the quarter, containing about 130 acres, was sold in mass, and not in separate parcels; and this is such a gross abuse of power on the part of the sheriff, as does of itself, in point of law, annul the sale, no matter what may have been the actual interest of the sheriff or of the purchaser. — Revised Statutes of 1825, p. 367, sec. 13; Rowley *vs.* Webb, 1 Binney's Rep., 62; Tiernon *vs.* Wilson, 6 Johns. Chan. Rep., 414; Jackson *vs.* Newton, 18 Johns. Rep., 355; Rierson *vs.* Nicholson, 2 Yeates' Rep., 516; Nesbitt *vs.* Dallam, 7 Gill. & Johns., 512; Berry *vs.* Eryfifth, 2 Har. & Gill., 338.

4. The reception, by a Circuit Court, of the acknowledgment of a sheriff's deed, is not a judicial confirmation of the sale, and has never been so considered in this State, either in theory or practice, and cannot be so considered in the case at bar. Here the sale was made by an officer of this court, under an execution and judgment of this court; and the Cooper Circuit Court certainly had no power to vacate or confirm a sale made under such authority.

5. If the sale be void, and not merely voidable, such invalidity is not cured by the presence of Hartt at the sale, and his omission to object to it, or by any other act now insisted upon by the defendant for that purpose. — Storer *vs.* Boswell, 3 Dana's Rep., 235; Pepper *vs.* Commonwealth, 6 Mon. Rep., 30.

6. A recognition and adoption by Hartt, and the other pre-emption patentees, of the town plat, filed by the New Madrid claimants, is a valid subdivision of the ground into lots, streets and alleys, and a valid dedication of the streets and alleys to the public. — City of Cincinnati *vs.* White's Lessee, 6 Peters' Rep., 440; Barclay *vs.* Howard's Lessee, 6 Peters' Rep., 513; New Orleans *vs.* The United States, 10 Peters' Rep., 662; Beatty *vs.* Kurts, 2 Peters' Rep., 256; Powlet *vs.* Clark, 9 Cranch's Rep., 292; McConnell *vs.* Trustees of Lexington, 13 Wheat. Rep., 582; Brown *vs.* Manning, 6 Ohio Rep., 298; 3 Kent's Com. (4th edit.), 450, 452.

7. The sale and conveyance, by the plaintiff and the other pre-emption patentees, of lots in the town, describing them by reference to their numbers on the plat filed in the clerk's office, is a recognition and adoption of such plat, and concludes them upon the question of the dedication of the streets and alleys. — 3 Kent's Com. (4th edit.), 450; in the matter of 32d street, 19 Wend. Rep., 128; 3 Kent's Com. (4th edit.), 432, 433, and cases there cited.

8. All the evidence of title in Huff or Potter, or other third person, or of title out of the plaintiff, and all the other evidence offered by the defendant, and rejected by the court after the plaintiff had closed his rebutting testimony, was either irrelevant to the issue, or only admissible as evidence in chief.

Scott, J., *delivered the opinion of the Court.*

This was an action of ejectment, commenced by G. C. Hartt against Charles Rector, for the north-west fractional quarter of section thirty-five, in township

*Rector* vs. *Hartt.*

forty-nine of range seventeen west, situate in Cooper county : the plaintiff had verdict and judgment.

On the trial, the plaintiff gave in evidence a patent from the United States to Henry Carroll, G. C. Hartt, and Robert Wallace, assignees of the pre-emption of Hannah Cole, for the tract of land in controversy, dated 19th November, 1822, and proved that the defendant was in possession of a part of the tract of land in dispute at the commencement of this suit.

The defendant read in evidence the transcript of a judgment of the Supreme Court of this State, in the name of T. A. Smith *vs.* G. C. Hartt and G. Tennille, and an execution thereon for the sum of $580 and costs, directed to the sheriff of Cooper county. It appears from the record, that, under this writ, the sheriff sold the land in controversy, together with other real and personal estate of G. C. Hartt, for the sum of $360 31¼, on the 17th of February, 1829. A deed was executed by the sheriff to W. M. Adams, the purchaser of the land in dispute, which was described in the advertisement of sale as the north-west fr. qr. section thirty-five of range seventeen west, and of township forty-nine, containing 152 acres, or thereabouts. The deed conveyed to him, for the sum of $100, all the right, title, claim, and interest of the said G. C. Hartt in the said tract. This deed was dated the 17th February, 1829, and acknowledged at the same term of the Cooper Circuit Court of the same year.

The plaintiff then read in evidence a plat of the town of Boonville. This plat was not authenticated in any manner : it was not signed or acknowledged by any person. The clerk of the Cooper Circuit Court testified that he had been in the office about ten years; that the plat was in the office when he first went into it, and is attached by a wafer to the last page of deed-book A, and immediately following the last deed in said book, which was recorded on the 24th June, 1820.

A second plat of the same town, similar to the first, with an addition of town lots, was also given in evidence. No marks of authenticity were on this plat: in this respect it was like the first. There was a memorandum on the plats, that full lots are ninety feet by one hundred and fifty; that the streets are seventy-five feet wide, and the alleys fifteen. The last plat was laid off on a page of deed-book B, and immediately succeeding the page upon which a deed is recorded, dated 28th February, 1824, and immediately preceding the page on which a deed was recorded on the 1st of April, 1824. The county surveyor being introduced as a witness, in answer to the question whether the first plat was a plat of the town of Boonville? testified, that the lots, names and widths of streets, corresponded with some in Boonville, and that he had always taken it to be a plat of said town ; that the last plat only varies from the first by a small addition to the number of lots ; that for seven or eight years he has surveyed lots in Boonville, and been guided by one or the other of said plats ; he knew of no other plat but these, which he first saw in the year 1835; that there are 235 lots on the plat, forty-eight of which are on the land in dispute.

The town of Boonville was first laid off in 1816 or 1817: the town was first built upon the land in dispute : at one time there were eight or ten families upon it; before 1830 they all, except one, had removed from it. A witness testified,

that, as agent for Mary Gilmore, he, with Morgan and Lucas, made a donation of land to Cooper county for a seat of justice, in 1817 or 1818, and that he knew lots were sold prior to that time by Morgan and Lucas; that he, as attorney for Mary Gilmore, referred to a plat of Boonville, in conveying, as early as 1819; that the town was laid off by Morgan and Lucas, on a New Madrid location; that Hartt pretended to no claim until after the town was laid out, and always claimed adversely to Morgan and Lucas. The plaintiff gave in evidence three several deeds — one executed by himself; one by himself, H. Carroll and B. Lockhart; and one by the three last-named grantors and Robert Wallace, bearing date respectively 28th December, 1821, 26th January and January 29th, 1820, releasing to the several alienees therein named, for the sum of five dollars, by them severally paid, all their right, title, interest and estate in those several lots in the town of Boonville, and describing the said lots by reference to the town plat above-mentioned: one of these three lots was on the tract of land in dispute. Witnesses intimate with plaintiff testified, that they never knew him to recognize the town laid out by Morgan and Lucas, who claimed adversely to Hartt; that all the families but one on the fractional quarter section in controversy abandoned it before February, 1829, and went to live on lots donated to the county. No stakes, stones, or monuments designated the boundaries of the lots; that the land was covered with brush and wood; no indication of a town; but one road passed through it; it was known that part of it had been laid off into town lots; it was not enclosed. Hartt frequently complained of persons cutting timber in streets and alleys, and forbade them from so doing. A son of the only tenant who continued upon the land, testified that he came to Boonville in 1818, and lived with his father until his death in 1826; that his father never claimed title under Hartt; that Hartt frequently forbade him from cutting trees on the streets and alleys; that there were four different occasions upon which Hart interdicted him from cutting timber; that on two occasions, after he had cut wood in the streets, Hartt took it from him, and hauled it away; that he was once cutting a bee tree in a street, and Hartt came to him and forbade him from so doing; he told Hartt he was cutting in a street; Hart replied, "It is immaterial — it is all private property;" that he cut trees between the years 1820 and 1825.

Robert Wallace testified, that he was one of the part owners of the pre-emption on the N. W. fr. qr. sec. 35, T. 49, R. 17; that he had sold lots by their number, according to the plat, but did not recollect ever to have heard Hartt speak of town lots, as distinguished from the other land in Hannah Cole's pre-emption; but it was usually called, among the owners, "The Hannah Cole pre-emption;" that he came to Boonville in 1817; that Hartt, Carroll and himself never laid off any town lots on the land, nor did they ever offer any lots at public or private sale; the New Madrid claim was located in the name of Thomas Hupp; that he made a deed of release to Thomas Rogers, above mentioned, without any other consideration than to release any right he might have under the pre-emption, and to quiet his title under the New Madrid claim; that he had an interest of about one-sixteenth in the pre-emption.

Amongst others, the court gave the jury the following instruction: that, if the

jury find that before the issuing of the execution against Hartt and Tennill, under which the sale to Adams was made, a portion of the quarter section of land in controversy, embracing lot No. 113, was, and had been, laid out into town lots, streets and alleys, for separate enjoyment by persons claiming the land adversely to Hartt, or those under whom Hartt claims, and that a plat of the lots, streets, and alleys had been, and was, deposited in the office of the clerk of the Circuit Court of Cooper county; and that afterwards, and before the issuing of the said execution in favor of Smith, Hartt, or those under whom Hartt claims, adopted such laying out of ground into town lots, streets and alleys, by conveying to others any of such lots so laid out, and describing the same in the deed of conveyance by reference to the plat, or by any other act; and further find, that the sheriff sold the whole quarter section in one lot to Adams, as alleged in Adams' deed; that such sale is void, and does not divest the plaintiff of his title created by the patent, unless the jury find, from the evidence, that Hartt desired the sheriff to sell the whole quarter section together.

The merits of the case will arise upon this instruction given by the court, at the instance of the plaintiff, Hartt. As much has been said in relation to the dedication of the streets and alleys on the N. W. qr. sec. 35, (the land in dispute), and as a contrariety of opinion is entertained as to the evidence of a dedication, we will bestow a little attention on that subject, although, in our opinion, it is beside the points on which this case must turn. One cannot but remark on the novelty of the position of the parties, in relation to this question. The owners of lots in a town or city are not contending with the original proprietors of the ground for the use of streets and alleys, which, they allege, has been granted to the public, but the proprietor himself is endeavoring to show, that he has made a dedication of streets and alleys for the benefit of others. If the owner of land had an intention or desire of making such a disposition of his property, it is strange that he should be at any difficulty in manifesting it, when he could so easily have placed the fact beyond all cavil or doubt. The doctrine seems well settled in America, that an owner of land may, without deed or writing, dedicate it to public uses. No particular form or ceremony is necessary in the dedication: all that is required is the assent of the owner of the land, and the fact of its being used for the public purposes intended by the appropriation. (6 Peters.) So it has been held, where the owner of land in a city sells building lots, bounding them by streets of a specified width, as laid down on a map, but not actually opened, the purchasers acquire a legal right, as against their grantor, to have the streets opened to the width delineated on the map, and the streets will be deemed to be dedicated to the public. (8 Wend. Rep.) Admitting the correctness of these principles — and they go the full length of the doctrine contended for by Hartt — will they warrant the instruction given by the court below? That instruction assumed, that Hartt adopted the plan of the town of Boonville, by conveying to others any of the lots designated on said plan, and describing the same in the deed of conveyance by reference to the plat: that is, if the jury found that he had conveyed a lot by reference to the plat of the town, then they ought to find, that he had made a dedication of the streets and alleys to the use of the public. Let it be borne in mind, that

58

*Rector* vs. *Hartt.*

Hartt himself is endeavoring to show that he made a dedication, and is seeking to deprive another of his right in consequence of such an act. It was easy for him to have put this matter beyond all uncertainty. As he is attempting to obtain an advantage in consequence of having made a dedication, it will be no hardship to require of him ample proof of the fact, for it was in his power to make it. He is not to be allowed to adopt a mysterious course in the disposition of his property, and lie by and take advantage of errors which he has caused by his own conduct. As Hartt set up the pretension of a dedication, what rule or principle prevented the defendant from showing that no such dedication was made? If the public was interested in establishing the fact that these lots had been set apart for public use, and enjoyed as such, and private and individual rights acquired with reference to it, the law would consider it in the nature of an *estoppel in pais*, which would preclude the original owner from revoking such dedication. (6 Peters' Rep.) All the principles contained in the books in reference to the dedication of private property for public use, have been maintained and adopted, and asserted in controversies in which others have been contending with the owner. It is a new doctrine that a party can, without authority of law, create an *estoppel* for himself, and be permitted to say he is *estopped* by his own act. It is for others to interpose the objection of an *estoppel*, and not for him who created it. If the jury had not been tied down by the instruction of the court, it is impossible to read the evidence preserved in the record, and entertain a moment's doubt but that they would have found a verdict, negativing the fact that there had been any adoption by Hartt of the plat of the town of Boonville. The town was laid off by Morgan and Lucas, who claimed adversely to Hartt: afterwards, Hartt and others purchased a preemption from Hannah Cole, which covered part of the land laid off into lots. Hartt and his co-tenants, after acquiring the pre-emption, released their right and title to three lots on the town plat, and in the deeds described the lots by reference to the plat. This is all the evidence necessary for him, by the terms of the instruction, to introduce, in order to establish a dedication; and, opposed to this, we find Hartt claiming adversely to Morgan and Lucas, prohibiting the cutting of trees on the streets and alleys on various occasions, taking away wood cut by others, and when told it was on streets and alleys, saying, "It was immaterial — it was all private property." He never sold a lot, unless the three quit-claim deeds can be called such. May not the reference to the plat, in the quit-claim deeds, have been made simply to enable him to describe the lots, as otherwise it might have been a matter of difficulty to give them a sufficient designation? But if anything were wanting to show that Hartt never intended to adopt the plat of Morgan and Lucas, it is his failure or neglect to cause a map or plat of the town to be made out, acknowledged, certified and deposited with the recorder, in pursuance of an act concerning plats of towns and villages, approved 18th December, 1824. That act was retrospective; and, by the second section, required that in all cases where any town, or addition to any town, shall have been laid out within this State, previous to the taking effect thereof, the proprietor of such town should, within one year after the taking effect of said act, cause a map of such town to be acknowledged in the same manner as a deed for land, certified and deposited with the

recorder of the county in which the town is situate, otherwise no lot could be sold, under a penalty of two hundred dollars. There were forty-eight lots on the tract of land in dispute : the title to one only of these lots had passed from Hartt, and that by one of the three quit-claim deeds before mentioned; and no plat was acknowledged and deposited with the recorder within the year prescribed by the said act, whereby Hartt was rendered incapable of selling a lot without incurring a penalty of two hundred dollars, a sum much greater than its value, if we may judge of the worth of such property from the evidence in the record. It is begging the question to say that the dedication had been made prior to the act of 1824, and therefore was not required to be acknowledged and deposited with the recorder.

Thus much as to the effect of the evidence of an adoption of the plan of the town by Hartt; but the admissibility of that evidence may be questioned.

On what principle is a party permitted to introduce his own acts as evidence for himself? We know the declarations or admissions of a party to the record, when against his interest, are sometimes admitted as evidence on his behalf, and so when they constitute a part of the *res gestæ*; but do these deeds, executed by Hartt, fall within either of these principles? Had this plat been acknowledged and deposited with the recorder, under the act of 1824, it would have been evidence of a dedication; but Hartt has not adopted that mode of evidencing his intention; and if he is now straitened to do it, it must be laid to his own neglect.

Let it be assumed that Hartt adopted the plat of the town which partially covered the quarter section in controversy; then it is contended by him, that the sale of the land in dispute, by the description of the N. W. fr. qr. sec. 35, T. 49, R. 17, is void, for uncertainty in the description of the property sold. Of the forty-eight lots laid off on the land, forty-seven were the property of Hartt, the only one disposed of being that before mentioned as conveyed to Rogers. So Hartt was the owner of the whole quarter section, with the exception of a single lot ! On the other hand, it is contended, that the acknowledgment of a sheriff's deed is a judicial act, and is in the nature of a judgment of confirmation, which cures all defects in the mode of sale, which the court issuing the process had the power to remedy.

If the court has jurisdiction of the case, the parties, and power to order the sale by a writ, a sale so made and a deed acknowledged cannot be set aside in a collateral action. This principle has been maintained by courts, in States whose mode of disposing of a debtor's real estate is different from that adopted by our laws. (Baldwin's Rep., 272.) In Pennsylvania, where this doctrine obtains, the question raised by the defendant in error, in consequence of the mode of conducting sheriff's sales of real property, would rarely arise. The point is, that the sheriff's deed is void for uncertainty in the description of the estate sold, just as a common-law deed would be held void for uncertainty, in not describing with sufficient precision the thing conveyed. This illustration, however, is not intended to convey the impression that no more certainty of description is required in a sale and conveyance by a sheriff, of real property, than in the deed of an individual conveying his own estate : in these, the maxim prevails — " *Id certum est, quod certum reddi potest.*" Not so in sheriffs' sales. Where land is taken and sold by a sheriff ab-

solutely, without any appraisement or right of redemption in the debtor, the law, at least, has enjoined it on the officer that it shall be done in such a manner as to prevent sacrifices and speculation; hence our courts have adopted the rule, that in sheriffs' sales no land passes but what the creditor can enable him to describe with reasonable certainty: the land must be sufficiently designated or described. This was the principle of the case of Evans. *vs.* Ashley, and was the principle of the various cases cited in the opinion delivered in that cause. In the controversy now under consideration, the sheriff sells a quarter section of land, as described on the public survey; about twenty-five acres of that tract is covered with the plat of a town; the defendant is the owner of the entire quarter section, with the exception of a lot ninety by one hundred and fifty feet; the streets and alleys are unopened, designated by no monuments, covered with brush and timber, with a single highway through it. Can the description of the sheriff be said not to be reasonably certain? In what respect is it uncertain? Do streets and alleys which have no existence in reality affect the description? or is it affected for the reason that there has been drawn on paper a plat of a town, which at some future day may be reared on the land? Does the fact, that a single lot is owned by another, make such a degree of uncertainty in the description as to render the sale void?—or is it to be held, that in a sale by a sheriff, of 152 acres of land, otherwise properly described, the circumstance that a half-acre of the tract is owned by another is to avoid a sale and conveyance for uncertainty in the description of the estate?—and because this is true, therefore the reverse of it is likewise so—that a sale of a lot containing a half-acre, by the description of a quarter section containing 152 acres, is likewise valid? Or will it be contended, that, in the case of Roosevelt *vs.* Jackson, (13 J. R.) if the sheriff had sold the Hardenburgh patent, instead of all the lands of Lawrence Van Kluch in that patent, that the former description would be sufficient to pass the lands of Van Kluch, but the latter would not? If the rule can be evaded in this way, it is not worth the breath that is spent in giving it utterance.

It is next objected by the defendant in error, that the whole quarter section, embracing as well the forty-eight town lots in which part of the tract was subdivided, as the residue of the quarter section, containing about 130 acres, was sold in mass, and not in separate parcels, and this is such a gross abuse of power on the part of the sheriff as does of itself, in point of law, annul the sales, no matter what may have been the intent of the sheriff or purchaser.

This position asserts the principle, that a sale in mass, by the sheriff, of real property, consisting of separate and distinct parcels, is absolutely void; or, in other words, that no title passes by a conveyance under such a sale, and the deed will be regarded as a nullity, under whatever circumstances it may be set up. The act concerning executions, (Rev. Code, 1825, sec. 13,) under which the sale in question took place, directs that in all cases where execution shall be levied upon any real estate, the sheriff or other officer levying the same shall divide such property, if susceptible of a division, and sell only so much thereof as will be sufficient to satisfy such execution, unless the defendant shall desire the whole of any tract or lot of land to be sold together, in which case it shall be sold accordingly.

We regard this statute as directory. A violation of its injunctions will not make a sale void, although it may be good cause for setting it aside on proper application. A similar statute in New York has received a similar construction; (Groff *vs.* Jones, 6 Wend., 522;) an authority entitled to respect, not only from the acknowledged ability of her judges, but from the fact that her mode of conducting sales of real estate under execution conforms more nearly to ours than most of the States. In the case of Hix *vs.* Perry, 7 Mo. Rep., it was held, that the section of the statute above cited was designed to prevent a sheriff from selling more land than was necessary to satisfy an execution, and that it was not applicable to sales in which the whole tract was insufficient for that purpose. We are not to be understood as maintaining, that a sheriff in all cases, when the whole of a debtor's real estate was insufficient to satisfy an execution, would be upheld in selling it altogether. This is a matter about which it is impossible to prescribe any definite rule. Each case must be governed by its own circumstances. It is easy to state instances, at the mention of which every one would be startled, while others may be supposed which would meet with our approbation. The law has entrusted the officer with a discretion in conducting sales of land, and confides that he will exercise that discretion in a manner most beneficial to all concerned, reserving a power in the courts to control and correct that discretion, when it has been abused, by setting aside his sales. To establish it as an inflexible rule, that all sales of distinct parcels of real estate in mass would be void, and so regarded in all proceedings, would, in many instances, seriously prejudice the debtor, and, by destroying the confidence of the public in such auctions, would cause a sacrifice of property. Who would buy an estate at a sale conducted by an officer, if, at any distance of time thereafter, it might be declared void, on the ground that he had improperly exercised a discretion with which he was entrusted by law? Let it not be supposed that we entertain the opinion, that a sale cannot be set aside when an officer has been guilty of an abuse of discretion in making it. It would be a stain upon our jurisprudence if such a power did not exist in the courts. All that is intended to be said is, that a sale in mass by a sheriff, of distinct parcels of real estate, is not *ipso facto* void. None of the authorities cited by counsel maintain such a principle. The case of Rowley *vs.* Brown (1 Bin., 62.) was a direct application to the court to set aside a sale, on the ground, that the parcels of the property taken in execution were distinct, and should have been sold separately. The motion was sustained. The court said it was a rule to disallow, in every case, a lumping sale by the sheriff, where, from the distinctness of the items of property, he can make distinct sales. There may be exceptions, but the purchaser must bring himself within them. The case of Tiernon *vs.* Wilson (6 J. C. R.) was a bill in chancery, brought by the debtor against the sheriff and purchaser, to set aside a sale, where, on an execution for $10 25, the sheriff sold two lots containing, together, 440 acres, a moity of which belonged to the defendant, and was worth $800, for the sum of $13. The sale was set aside. The chancellor, in delivering his opinion, observed, it is difficult to define precisely the extent of property that a sheriff may sell together in mass. There must be a sound discretion exercised by the officer, and each case will furnish a rule applicable to it

under all the circumstances. The point was made in the case of Jackson *vs.* Newton, but not determined by the court. This was an action of ejectment, brought by a purchaser under a sheriff's sale, against a tenant, who held adversely to the debtor. There was a sale by the sheriff of specific forms and lots of land together, and it was held, that a doubt could not be entertained, but that the court would have set it aside upon a direct application. Sales in mass, of real estate, held in several parcels, are not to be tolerated; they are oppressive and unnecessary, and deserve animadversion. So, in the case of Nesbit *vs.* Dallam, (7 Gill and Johns. Rep.,) the sale was set aside, because the sheriff had sold in mass divers lots of ground situated in the same town, but separate and distinct from each other. *On a motion to vacate it,* the court held such a sale was to be regarded as *prima facie* void, and he who seeks to sustain it must show its justice and expediency. This was a direct application to the court to set aside the sale. We subscribe to the principle to be extracted from these cases, that a sale in mass, by a sheriff, of distinct parcels of real estate, may be set aside on motion, or by a bill in chancery, and they, in our opinion, furnish no foundation for the contrary rule attempted to be set up, that such a sale is *ipso facto* void, and will be so regarded in a collateral proceeding. Were we without the experience of others to guide us to a correct conclusion on this subject, we must confess that the mildness and conservative tendency of the former rule, when contrasted with the harshness and severity of the latter, could not but win our approbation.

Judgment reversed, and cause remanded.

NAPTON, *Judge,* did not sit in this cause.