HARRY KELSEY, Appellant, v. CITY OF SHREWSBURY, a Municipal Corporation et al.—71 S. W. (2d) 730.

Division Two, May 17, 1934.

*Joseph C. McAtee* and *McAtee & Foley* for appellant.

*Brackman & Versen* for respondents.

WESTHUES, C.—Appellant filed suit in the Circuit Court of St. Louis County, Missouri, against respondents, city of Shrewsbury, and certain officers of said city to enjoin them from interfering with appellant's possession of lot three, block seven of the First Subdivision of Shrewsbury Park. The petition contained three counts. In the second and third appellant asked for damages. Further reference to these will be unnecessary. The city filed an answer alleging that the strip of land in controversy was a roadway and street of the city of Shrewsbury, acquired by adverse possession. Defendant city also asked the court to define the titles and interests of the respective parties in and to the strip of ground in question. The trial court entered a judgment against plaintiff on all three counts of the petition. The court did not, by its judgment, define the interests the parties had to the property. From this judgment appellant duly appealed.

The facts of the case upon which it must be decided are not in

dispute. Appellant purchased the lot from the Shrewsbury Park & Improvement Company, receiving a deed in September, 1922. The company mentioned will be hereinafter referred to as the park company. More than forty years ago it platted the land that now forms the city of Shrewsbury. The park company built a station next to the Frisco Railroad tracks for the accommodation of the people who made their homes in Shrewsbury and desired to use the railroad service to go to and from the city of St. Louis. Lot three abutted the plot of ground set aside for the station. The park company invited prospective purchasers to come to Shrewsbury and had agents meet them at the station. These prospective purchasers were then taken for an inspection of the various lots. A number of lots were not sold and remained vacant for many years. These were not inclosed and the public utilized them without hinderance as a passageway whenever convenient. The station grounds were located south of lot three. Arlington Avenue is located north of this lot. Gratiot Avenue is the first street east of lot three and intersects with Arlington Avenue. Gratiot Avenue crosses the railroad tracks east of the station grounds. The park company, when it would take prospective purchasers to view the lots, for convenience sake, made use of lot three as a passageway from the station north to Arlington Avenue and as a short cut from Arlington Avenue to the station. The park company also placed rock and gravel on the passageway over lot three so as to make it passable in wet weather. As the village grew the inhabitants also traveled this road to and from the station. Witnesses testified that lot four and other lots were traveled in like manner until the time they were occupied. However, the passageway on lot three was the only one that was improved. Witnesses testified that for more than twenty-five or thirty years the general public traveled over lot three. So far as the record discloses the park company at no time informed any prospective purchaser or anyone else that the passageway over lot three was dedicated for public use. Nor was it shown that this road was ever referred to in any deed of the company or by any plat. The city at no time improved the roadway. No building or improvement was constructed by any person or the city in reliance upon the passageway being a public street. The question of whether the roadway was a public street was never mentioned until the year 1930. The owner of lot four, at that time, was making an excavation for the purpose of erecting a building and he obtained appellant's permission to fill the depression, created by the roadway on lot three, with the earth taken from the excavation. The mayor of the city thereupon, after a meeting of the board of aldermen, ordered the earth removed. This was done over appellant's protest. Shortly thereafter this suit was filed.

█ The only fact proven or claimed by the city in support of

its right to the strip of ground was its continued use for more than twenty years by people who found it a convenient passageway to and from the station. Does this fact, in view of the surroundings, constitute adverse possession as recognized by the law so as to deprive the owner of the title to the land involved? We think not. In 29 Corpus Juris, 379, section 10, we read:

"In order to create a highway over private lands by prescription, the public user must be exclusive, that is, it must be such as to show a claim of right to use the land as a highway *to the exclusion of any individual right of the owner inconsistent therewith*. Retention of dominion and control over the land by the owner precludes prescription." (Italics ours.)

The park company had for many years, and up to the year 1922, when it sold the lot to appellant, for convenience sake, used the roadway over lot three. It had a right to and did improve it so as to render the roadway serviceable during all seasons of the year. The use of the roadway by the general public was not inconsistent with any use made of the lot by its owner, but on the contrary was entirely in harmony therewith. No overt act was ever committed by any individual, the public generally, or the city, which could be construed as a claim of any right adverse to the owner. In a similar case, Field v. Mark, 125 Mo. 502, 28 S. W. 1004, l. c. 1008, this court correctly stated the law as follows:

"The use by the public was not such as to indicate an abandonment of the strip exclusively to the use of the community; and when user alone, disconnected with any act of the owner showing an intent to dedicate, is relied on as evidence of a dedication of a right of way to the public, it must continue the length of time necessary to bar an action to recover possession of land, and it must be adverse. We are disposed to concede much to the judgment of the learned circuit court in the trial of a question of fact, but in this case, granting that all the witnesses of plaintiff are entitled to credit (and we assume they were, and certainly have no disposition to intimate otherwise), still on their own showing, it seems to us, they make out merely a case of neighborly license, and fail to furnish that measure of proof required by our laws to divest the title of real estate out of the real owner, and vest it in that intangible entity, the public, or an adjoining proprietor."

In State v. Hood, 143 Mo. App. 313, 126 S. W. 992, l. c. 994, the Springfield Court of Appeals said:

"It takes more than a continuous use to make a road a public highway by user. There must be an adverse use for the statutory period, and this must be continuous and exclusive."

In a more recent case, Burnside v. Doolittle, 324 Mo. 722, 24 S. W. (2d) 1011, l. c. 1016 (5) the court said:

"But it is not the mere occupancy or possession of land which must be known to the true owner in order to prejudice his rights, but its adverse character."

The burden of proof in this case was on the city to establish title by adverse possession. This, even though it was the defendant in the case. One of the elements of adverse possession is that possession must be hostile. There was no proof whatever of this element. Even if all the evidence in the case be construed most favorably to defendants it does not authorize a finding that the use of the roadway was .hostile to the rights of the appellant or his predecessor in title.

This being true it follows that defendants had no interest in lot three, mentioned above, and the judgment must be reversed and the cause remanded. It is so ordered. *Cooley* and *Fitzsimmons, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. *Leedy* and *Tipton, JJ.*, concur; *Ellison, P. J.*, absent.