Vern H. SCHNEIDER, and Harry J. Burkart, William J. Young and Chas. D. Long, Trustees, Appellants-Plaintiffs,

v.

STATE TAX COMMISSION of Missouri, The Board of Education of the City of St. Louis, Intervenor, and The City of St. Louis, a Municipal Corporation, Intervenor, Respondents-Defendants.

No. 46722.

Supreme Court of Missouri,

Division No. 2.

Dec. 8, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied Jan. 12, 1959.

Rassieur, Long & Yawitz, Robert H. Batts, Terry K. Donk, St. Louis, for appellants.

Charles J. Dolan, Acting City Counselor, Thomas F. McGuire, Associate City Counselor, James J. Gallagher, Asst. City Counselor, St. Louis, for respondents Assessor, City of St. Louis, and City of St. Louis.

John M. Dalton, Atty. Gen., Donal D. Guffey, Asst. Atty. Gen., for respondent State Tax Commission.

Emmet T. Carter, Doris Banta, St. Louis, for respondent Bd. of Education of City of St. Louis.

BARRETT, Commissioner.

The purpose of this suit, instituted in the Circuit Court of the City of St. Louis, is to review a proceeding heard by the State Tax Commission in which the plaintiffs sought a reduction in the assessment of a strip of ground; they specifically asked that an assessment of $60,420 be reduced to what they said was the true value of the property, $1,000. As of January 1, 1956, the Assessor of St. Louis assessed the strip of ground, a roadway through an industrial area, at $80,990; upon review the Board of Equalization determined its tax valuation to be $60,420 and accordingly assessed the property. After a hearing the State Tax Commission found that the assessment was not unfair, unlawful, improper or arbitrary and likewise found the proper assessed valuation to be $60,420. The circuit court entered a judgment approving and affirming the commission's findings and the plaintiffs have appealed from that judgment and thus the appeal involves a construction of the revenue laws of the state. Const.Mo.1945, Art. 5, Sec. 3, V.A.M.S.; Midwest Bible & Missionary Inst. v. Sestric, 364 Mo. 167, 260 S.W.2d 25.

In the prior proceedings several questions were raised, but in their motion for a new trial and in their briefs here but

two problems are presented: (1) whether the State Tax Commission has the jurisdiction and duty to determine whether the roadway had been dedicated to the public; and (2) whether the roadway had in fact been dedicated to the public and is now a city-owned street and therefore exempt from taxation; "The following subjects shall be exempt from taxation for state, county or local purposes: * * * (2) Lands and other property belonging to any city * * *." V.A.M.S. Sec. 137.100 (2). In the conclusion we have come to upon this record, that the roadway has not been dedicated to the City of St. Louis so as to relieve the land and its owners of the burden of taxes, it is not necessary to consider any other question.

The tract of land comprising and known as Central Industrial District is an elongated, crescent-shaped area, bounded on its concave and convex sides by railroad tracks, the Missouri Pacific Railroad and the St. Louis-San Francisco Railroad; at one end it is intersected by Chouteau Avenue and at the other end by Vandeventer and Tower Grove Avenues. Inside the area and adjacent to one or the other of the railroad tracks there are a large number of private business and industrial concerns and running through the area is a roadway known as Central Industrial Drive. The entire area, Central Industrial District, is privately owned. It was first owned by a corporation, Central Industrial District, Inc., but in May 1953 "a syndicate" purchased the corporation's stock, liquidated the corporation, and eventually the title to the district was transferred to the four individual plaintiffs who as trustees hold title to the property for the syndicate or "partnership" as it is sometimes called.

Not only is the industrial area privately owned, the roadway or street through it has always been conveyed as a part of the district, the legal title to the strip of land comprising the roadway is in the four trustees and unless it has been dedicated to the public is also privately owned. In this connection and to precisely delimit the issues involved upon this appeal it must be noted that we are concerned only with dedication, we are not concerned with any of the other ways in which a road may be established or in which a private street or alley may become a public street. See and compare: V.A.M.S. Sec. 228.190; Gover v. Cleveland, Mo.App., 299 S.W.2d 239, 241; Szombathy v. City of Berkeley, Mo., 280 S.W.2d 834; Kelsey v. City of Shrewsbury, 335 Mo. 78, 71 S.W.2d 730.

To substantiate their claim of dedication and tax exemption the trustees proved by a public accountant that after the syndicate acquired the property the district was valued for accounting purposes; the land and buildings were valued and "set-up" on the books and records for "depreciation purposes" and "we have considered there was no value on this highway, * * * no price has been assigned to the Roadway." In making an appraisal of the property for accounting purposes a professional appraiser did not assign any value to the roadway because it was "non-usable ground, * * * it had no particular use of itself" other than as a driveway "all the way through." In 1914 or 1915 the city in conjunction with the railroads constructed "service entrances" to the area; the city separated grades at Tower Grove "and all the Frisco had to do was build a connection down Park Avenue." Thereafter the entrances were open and used by the public and "by everybody that is in business down there." This witness and others, particularly people with their industrial businesses in the area, testified that the street had been open and traveled by the public for many years, certainly since 1926.

It may be noted, however, that convenient use by the public was the only conduct shown indicative of dedication. But that use was not of necessity inconsistent with any use the owners made of the property and such proof is not conclusive of dedication. Kelsey v. City of

Shrewsbury, supra. This roadway was not set aside by the public authorities (Bonert v. White, Sup., 132 N.Y.S.2d 851) and, even though a plat of the area was recorded, the plaintiffs do not rely upon having platted the area for the purpose of selling lots and following that continuous use by the public as was the fact, for example, in Gaspard v. Edwin M. LeBaron, Inc., 107 Cal.App.2d.356, 237 P.2d 278. Except for what it may have done in providing a means of egress and ingress to the area, the city has not repaired, maintained or spent any public funds on Central Industrial Drive, all repairs and changes in the street have been made and paid for by the district's owners, a circumstance unfavorable to intention to dedicate to public use. Kelsey v. City of Shrewsbury, supra. It is a fair inference from this record that throughout the years the roadway has been assessed and taxed as a part of Central Industrial District and its owners have paid the taxes. It may be, in some circumstances, that the collection of taxes is not in itself sufficient to negative the city's acceptance of dedication, at least "in the absence of a showing that the assessor had taken the easement into account in fixing the valuation." City of Caruthersville v. Cantrell, Mo.App., 230 S.W.2d 160, 166; 26 C.J.S. Dedication § 16, p. 430. How or why it came about here is not known but the parties have separated the assessment of the roadway from the assessment of the entire district and what the assessor considered or did not consider does not appear. In any event the city authorities did not secure a change in the assessment rolls (City of Ardmore v. Knight, (Okla.) 270 P.2d 325, 328), and the owners of the area made no effort prior to this proceeding to have the roadway freed from the assessment and payment of taxes. Mulik v. Jorganian, Mo.App., 37 S.W.2d 963. It may be that the receipt of taxes is not conclusive against the city's acceptance of dedication (Point Pleasant Manor Bldg. Co. v. Brown, 42 N.J.Super. 297, 126 A.2d 219), or, that the

payment of taxes is not conclusive of the owner's intention to dedicate, but it is a fact in the circumstances of this case "inconsistent with the hypothesis of an abandonment of title to the public." Brinck v. Collier, 56 Mo. 160, 168. It is not necessary to determine this appeal upon these noted factors usually involved in the dedication cases because there are other additional factors and circumstances which repel both the owner's intention to dedicate and the city's acceptance, an element necessary to complete the act of dedication, especially "to work an exemption from taxation." 16 Am.Jur., Secs. 17, p. 361, 31, pp. 377, 378; Brinck v. Collier, supra; Carpenter v. City of St. Joseph, 263 Mo. 705, 174 S.W. 53; Connell v. Jersey Realty & Investment Co., 352 Mo. 1122, 180 S.W. 2d 49.

After the "syndicate" acquired the Central Industrial District the trustees entered into and received from the owners a document entitled, "Indenture Regulating Use Of The Private Streets And Defining Restrictions Governing The Land Located In The 'Central Industrial District,' An Industrial Subdivision." This document recites that the grantor has caused a plat of the area to be made and recorded, and (italics supplied) *"Whereas, the Party of the First Part desires and intends that Central Industrial Drive and the easements designated and delineated on said plat shall be and are for the exclusive use and benefits of the owners of the land in said District and their heirs and assigns,"* and for the purpose of continuing the area as a desirable industrial area, the grantor-owner conveyed to the trustees "the strip or parcel of land twenty feet wide extending from Park Avenue on the South to Chouteau Avenue on the North as the same is delineated, set apart and styled on said plat as 'Central Industrial Drive,' all of the width and length as shown on said plat." Briefly, this document conveys to the trustees the water lines, gas lines and other easements "paralleling" the street, and the trustees are enjoined that they

"shall keep the said Central Industrial Drive and the adjoining easements open at all times *for the private use and benefit of owners of land in said District with power in the Trustees as they may deem best at any time to make, improve, construct and reconstruct the same, to regulate the uses thereof and to provide for proper lighting, policing and protection of the same * * *."* The trustees are directed to secure the benefits of ingress and egress "to, over, along and across" the roadway for the benefit of owners in the area. There are other pertinent and relevant provisions but in part (5) of Clause C this document invests the trustees with authority *"to convey and grant to others outside of said District * * * the right to use said Central Industrial Drive,"* but this granted authority is subject to the restriction and limitation that any such granted use be "consistent with the use by the other owners or occupants of land in the District" and *"provided, however, that such right or use shall be in common with the right of those within the Central Industrial District."*

In subdivision 11 the trustees are given the authority *"to dedicate to public use Central Industrial Drive and the easements paralleling the same."* But the authority to dedicate to public use is also hedged about with restrictions and may not be exercised *"unless a request therefor be made in writing by the owners of a majority of the land."* Before the State Tax Commission one of the witnesses, Mr. Young (who we assume is one of the trustees), was asked whether the trustees had exercised their authority to dedicate the street and he said, "I most definitely have not." The trustees, by letter, did inquire of the Department of Streets and Sewers as to "what steps should be taken by the Trustees in offering to dedicate Central Industrial Drive" but after receiving the city's reply in which the usual and accepted formal procedure was outlined and it was observed that the city "(did) not consider the present width of the street nor the present width of the roadway pavement as sufficient for a public highway," the trustees took no further steps to formally comply with the city's suggestions.

■ In the face of the explicit terms of this legal document, solemnly executed and recorded, and in the absence of an attempt by the trustees to comply with its specific directions, it is very difficult, if not impossible, to draw the inference of an intention to dedicate to public use. In all of the detailed circumstances even if it be dubiously assumed that the plaintiff's evidence was of such cogent force as to support the inference of intention to dedicate, it certainly was not sufficient to prove the city's acceptance, even though there was some public vehicular use. Brinck v. Collier, supra; Mulik v. Jorganian, supra; Connell v. Jersey Realty & Investment Co., supra. In these anomalous circumstances the court's century old observation is most appropriate: "One cannot but remark on the novelty of the position of the parties, in relation to this question. The owners of lots in a town or city are not contending with the original proprietors of the ground for the use of the streets and alleys, which, they allege, has been granted to the public, but the proprietor himself is endeavoring to show, that he has made a dedication of streets and alleys for the benefit of others. If the owner of land had an intention or desire of making such a disposition of his property, it is strange that he should be at any difficulty in manifesting it, when he could so easily have placed the fact beyond all cavil or doubt." Rector v. Hartt, 8 Mo. 448, 457. Here there was plainly not a dedication of this roadway to the public in the sense that it is now "property belonging to any city" and therefore exempt from taxation. V.A.M.S. Sec. 137.100(2). "Taxation is the rule, and exemption therefrom the exception, and the burden was upon plaintiffs to bring themselves clearly within the provisions of the statute exempting property * * * from taxation; and this they failed to do." Adelphia

Lodge v. Crawford, 157 Mo. 356, 359, 57 S.W. 1020.

In this view of the appeal it is immaterial whether the State Tax Commission had the jurisdiction and power to determine the fact; upon this record it could not have found a dedication and there is no other claim or proof that the valuation of $60,420 was improper and should be reduced to $1,-000. For the reasons indicated the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.